Fine. Thank you, Your Honor. Good morning. May it please the Court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Mr. Hammons. I'd like to reserve a minute or two for rebuttal, if I may. Yeah, try to keep your voice up a little bit. Okay. All right. In this case, the District Court sentenced Mr. Hammons to 10 months' imprisonment upon finding that he had violated his supervised release. In doing so, the Court gave no reasons for the choice, didn't refer to the guidelines, and even under a plein air review, the sentence must be vacated and the case remanded. First, there was clearly error. The Court never addressed any of the statutory factors under 3583e. The Court never addressed the guideline range. The Court failed to explain the sentence. In fact, the Court said virtually nothing at all with respect to the sentence at the hearing itself, and said nothing with respect to the reasons for imposing the sentence. Now, we asked you to be prepared to discuss WAC 9 today. Would you like to do that now? You didn't mention it before. My reply brief, yes. Yes, Your Honor, I believe WAC 9 controls this case. In WAC 9, as in here, the Court found plein air and found they are required vacating the sentence and reversing. In WAC 9, as here, the Court failed to announce the guideline range, failed to announce the reference to 3583 factors. And then the Court in WAC 9, this Court found that the standard was where there was a reasonable probability that the sentence might have been different had there not been any error. And based on what it found to be blatant error in failing to address the guidelines and in failing to give any reasons for the sentence, the Court found there's a reasonable possibility. Same as here. We have a number of reasons why the sentence may have been different had the Court not erred. That is, certainly some of the statutory factors that go into choosing an appropriate sentence are the rehabilitation. And here, as the defense counsel pointed out at the hearing, based on the underlying, the conduct underlying the violation, which was a state charge for driving under the influence, between the time of picking up that convention and the time of the hearing in this case, Mr. Hammons had completed a number of, had completed his community service or made substantial progress to it, had completed a drunk driving course, had completed job training, and had participated in AA. So he had made substantial efforts towards rehabilitating himself in the conduct that was the cause of the violation. Further, the probation officer in this case had recommended against custody and had recommended commitment to a half White House for further treatment. Again, the Court didn't reference any of that. And it's certainly reasonably possible that had the Court done so, it might have chosen an alternative to incarceration at the top of the guideline range. And finally, the last factor that suggests the sentence might have been different had the Court not erred is that the Court, to the extent there was a guideline range, and we don't know what guideline range, advisory guideline range the Court was using, because, again, it never referenced it and it never announced it, but to the extent that one was calculated, the only guideline range calculated was in the probation officer's report, and that was a wrong range. It was calculate using the wrong criminal history. So had the Court referenced the range, it's certainly possible at that point someone might have said, hey, that's the wrong range, or we would have at least known that the Court was using the wrong range. Had the Court used the right range, which was a lower range, it's certainly reasonably possible that the sentence would have been different. Under these facts, the conclusion is clear that there was plain error. Well, the government argues, among other things, that the violation report was not the only document in front of the judge. In fact, the judge also had the pre-sentence investigation report and the Alabama judgment, both of which correctly stated it was a Category 2, not a Category 3 offense. Since you didn't respond to that, I wondered what your comment is about that. Well, again, had the Court announced what ranges were referring to, we wouldn't have to speculate on whether the Court went back and looked at the pre-sentence report and then decided that the probation officer's report, which was actually the most important document before it, was actually in error. And then we could further speculate that had the Court actually done that, the Court might have said, oh, by the way, the probation officer's report is in error and here's the correct range and that's what I'm using. Absent any of that, it's just sheer speculation to suggest that the Court went back and did that, particularly when what we have before it is an incorrect range. The Court sent us into 10 months, which was within the appropriate range. Since he had these multiple documents before him, why should we call it plain error? Because there is no indication that the Court used the right range. We know that he had these documents before him. That's always going to be the case. But without any indication that the Court relied on the proper documents outside of a sentence that's within the range and that actually was within both ranges, we can't know whether there's a reasonable point. I mean, there is obviously a reasonable question of whether there's a reasonable possibility that the sentence would have been different had the Court not erred. The District Court didn't discuss the appropriate sentencing factors that are set out in 3553. Did he do that? No, he did not, Your Honor. And in 3583? No. It made not one single reference to either of those. Did he state his reasons for imposing a 10-month sentence? As far as I can tell from the record, there's absolutely no reasons given whatsoever. Are you saying that under Lockneeney, that that constitutes plain error? That's correct, Your Honor. And that's what that case stands for? That's your position? That's correct. And presumably Lockneene, the Court had before it a PSR that had the correct range as well. So just that we know that there's a correct range out there someplace is certainly not dispositive of the issue. So in Lockneeney, the Court stated that the District Court's total failure to announce its calculated guidelines range to the parties and to consider expressly the Section 3553A factors is such a serious departure from established procedures that we will not reject the appeal because of the prejudice prong of plain error review. That would be our position as well, Your Honor. Okay. You want to save some time for rebuttal? Yes, I do. Thank you. Good morning, Your Honors. Ashley Aiken on behalf of the United States. There are two issues before the Court today that we are discussing, whether there was plain error in regards to the 3553 factors and whether there was plain error in regards to the perceived failure to calculate the criminal history category. And in this respect, the Court has directed us to the Lockneene case. Tell me, it doesn't seem to me as if Judge Wilson, who moves rather quickly, that he really followed the requirements of 3553 or 3583. And I think... Let me tell you this. I think the guidelines are an abomination. You know, they're illegal, they violate the Constitution, and they've just created tremendous problems. But we have them. And, you know, you've got to go through the guidelines, even though they're illegal, and they're advisory. And if you're going to depart from them, you've got to give your reasons and all this. And you've got to be very careful when you handle this. Now, it doesn't seem to me as if he was very careful here. He was upset with them because of this drunk driving conviction. And so he was going to punish them for that. And I think, in my opinion, because this is a probation revocation matter, what the Court was concerned of is not punishment, which is not a factor that's appropriate. Well, what's the problem with sending it back and telling them to do it right? Well, because I think the legal standard here is that we need to maintain that it was a plain charge. We don't have that in this matter. Were you the U.S. attorney at the time? Yes, I was, Your Honor. Well, don't you think maybe your job would have been to say to Judge Wilson, Your Honor, I know it's a burden, but we've got to comply with 3553 and 3583. And then you'd probably say, oops, I need to comply with it. And did you call his attention to the error in the calculation? In reference to what was in the probation report? Yeah. No, I did not. You see, if you'd have done that, we wouldn't be here today. Because, you know, I'm not really faulting you because I know him, and he probably wouldn't have listened to you anyway. But at least we'd have had a record where you'd have called that to his attention. And he might have. He might have. And, you know, he's a good friend of mine. I love him dearly. You know, the rule's the rule. And if I could just address the Court's concerns in regards to that matter. While Judge Wilson didn't specifically say, I'm considering the 3553 factors specifically, he did go through and have a colloquy with the defendant about the nature of the offense, whether any rehabilitation had worked. In this case, because it was a probation revocation matter, we had had four violations before the Court, three of which were dismissed. One of those dirty tests occurred between him admitting the allegation won the DUI and the sentencing. So I think Judge Wilson was really speaking to a breach of the Court's trust. Well, he's got to say that, what he's doing. That's all. Just a few sentences, we wouldn't be here today. But I think that can be inferred from his line of questioning with the defendant. Why should we have to infer anything? And I agree with Your Honor that this is not a textbook way that we would consider what we would like to have the sentencing go. But I don't think that it amounts to plain error, because I don't think the third and fourth prongs of the plain error standard are met in this case. I don't think that, at this point, the defendant can say that there was a – that it affected his substantive rights. In this matter – Doesn't this – you heard the quote that I read from Wakini, didn't you? The court stated that the district court's total failure to announce its calculated guideline range to the parties and to consider expressly – expressly – the Section 3553A factors as such a serious departure from established procedures that we will not reject the appeal because the prejudice prong of plain error – because of the prejudice prong of plain error review. And I think that in this matter – I think what's different in this case than in Wakini is that Judge Reel, the district court judge, in that matter, didn't state any reasons, didn't have any colloquy with either counsel or the defendant about the reasons that he was offering this sentence. Where in this case, Judge Wilson was very concerned about the fact that rehabilitation didn't seem to be working with this defendant and was questioning him. And in the violation report, it said that he was going to be doing these classes. It said that he was going to be going to AA. Judge Wilson knew – the district court knew this at the time. And at that point, his colloquy with the defendant concerned whether he thought that incarceration was appropriate as opposed to whether rehabilitation was appropriate, which is what probation and Mr. Hammond's counsel was advocating, as was the government. I think what the issue here – what really differentiates our case from Wakini is that, one, I don't think substantive rights were affected in that there is no – defendant can't put forth any proof or any evidence that Judge Wilson was even considering rehabilitation. Judge Wilson went for a high-end sentence when it comes to incarceration. And the fourth prong, when it talks about undermining the public reputation and confidence in the proceedings, the district court's reasoning, I think, can be – is pretty clear from the – from the colloquy he had with the defendant. He intentionally chose incarceration over the recommendation of rehabilitation. He intentionally chose a high-end sentence. No matter what criminal history category range we're looking at, he chose a high-end incarceration sentence as opposed to a four- or five-month range. And when we look about considering the breach of the court's trust, I think the public's reputation and confidence in the proceeding is not undermined because we know that Judge Wilson was looking at this because he was concerned. Does he require – those factors, as I recall, those are factors that you're not supposed to consider when you're dealing with a violation of probation. He's not allowed to consider punishment. The 3553A1 factor that deals with punishment is not – that's not in the purview of the – There's some other factors. There are a lot of the 3553A factors, but not all of them. But he considered some that he's told he shouldn't consider. I don't think that the record reflects that. I think when he reflected the ones that you are supposed to reflect, which are the nature and circumstances of the offense, he questioned the defendant about the DUI, how did it happen, what steps were taken after. He also spoke to him about deterrence. I know the – on the record in the excerpt, the defendant made a comment that he was no longer drinking when we had a violation in between the admitting of Allegation 1 and the actual sentencing date, which the defendant stated on the record. I think that goes a lot to the deterrence factor and the fact that rehabilitation doesn't seem to be working with this defendant. And I think when it goes to – Counsel, in light of that, now, obviously, events that occur between the initial petition to revoke probation or supervised release and the ultimate disposition are very significant. But what is the significance of, one, him denying it, and, two, as part of the resolution, you're dismissing it? Under those circumstances, wouldn't it be inappropriate for us to consider that? I just think that we're looking at the totality of the circumstances, that there were other allegations that rehabilitation had not worked for this defendant. This was not his first violation of supervisory release. He did have a prior violation. This one, when we did have a DUI conviction, which is the one the government decided to move forward on in the allegation that was admitted and uncontested, we also had two dirty tests and a no-show. And that is part of the court record, although we did dismiss the allegations. They are at this point misalleged. But he denied everything but the DUI. That is correct. So his denial coupled with your dismissal pretty well took that off the table, didn't it? I think it is no longer part of the record when he was judging it. He was just doing – running through the 3553 factors as it pertained to the DUI conviction. His colloquy of the defendant was just for the DUI conviction. So in that matter, I think running through the judge did touch on the 3553 factors when he was addressing the colloquy with the defendant. And that doesn't – because he did address the 3553 factors as required in a probation or revocation, although he didn't specifically say that's what he was doing, it can be inferred from the record. It doesn't meet the third prong, which says that the defendant can show that there was an effect of his substantive rights. And it doesn't meet the fourth prong, which says that this is going to undermine the public's faith in our system and how these sentencings are carrying out. Although I do concede it wasn't a textbook way to run the sentencing. I don't think any substantive rights of the defendant were affected in this matter. And there was nothing that the defendant put forward that would show – Well, is the court required to state the reasons for imposing a particular sentence? Not if it's within guideline range. I mean, this is within guideline range, I think, under the CARTI decision. Section 3553 requires the court to state reasons for imposing a particular sentence. And, I mean, that language here, that comes out of an in-bank case, the CARTI case, decided this year. And the – yeah. It's certainly not a textbook. So – and – but we have these procedures, and I don't like them. And I'm sure he doesn't like them. But I guess we have to follow them. And, I mean, you're a good advocate. I can see that. And I wish you had told him what he had to do at that time. It was my first appearance as an AUSA. It was my first appearance as an AUSA. Looking back on it, I wish I had, too. Well, how long ago was that? About four or five months ago. Well, you sure became a skillful advocate very quickly, I'll say that. Well, thank you, Your Honor. All right. I know you can probably be a little intimidating. But anyway, oh, you're over your time. Okay. Thanks. Yeah. The Court has no other questions. I'll submit. Thank you, Your Honor. All right. Just a couple of quick points. One, I want to sort of emphasize a point that Judge Progerson made in reference to Ms. Aiken's argument, and that is she had argued that the colloquy provided reasons for the sentence choice. And to the extent that it did is another reason to vacate the sentence. One of the inferences that the government drew from that colloquy was that Judge Wilson believed that the underlying violation was a serious offense. And, again, under McBail, that's expressly precluded in a supervised release violation. Well, now, isn't it more accurate to say that the case you cite says that the court cannot stress retribution, but it is under an obligation to be concerned about community protection. So when you're talking about something like drunk driving, particularly where someone, assuming we can consider the fact that the man continued to drink, certainly drunk driving creates a danger to the public. And to the extent that the judge is saying it's serious for that reason, he's certainly not violating the rule against relying on retribution. No, I agree, Your Honor. And if Judge Wilson had said that explicitly, then we wouldn't be here. But he did not. So there are certainly competing inferences from what he said to the extent that you can draw anything from what he said. My final point that I want to make is that if this Court does in fact vacate the sentence that we would request, excuse me, request that the mandate issue immediately, Mr. Hammons is already in custody, and his sentence is only 10 months. I think his release date is July 13th. Would you say again? Mr. Hammons is in custody on the sentence. So if the Court were to vacate it, I would ask that the Court consider issuing immediately, issuing the mandate, so we could get this case back before Judge Wilson. I was just speaking to that microphone. We would request that the Court issue the mandate immediately if it were to vacate the sentence so that we could get the case back before Judge Wilson before he finished his sentence. Mr. Hammons was only sentenced to 10 months. His date of release, July 13th, 2009. Oh, okay. I got it. Next year. Thank you. This matter has been submitted. And let's see. We come to the next case. It's North Carolina.
judges: Pregerson, Nelson, Singleton